UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------X
                                                   :

EVRI LIMITED                          :      Case No. _____

                      Plaintiff,      :

      v.                                         :
                                          :      **COMPLAINT AND DEMAND**
UNICARGO SUPPLY CHAIN      :      **FOR JURY TRIAL**
SOLUTIONS, INC.                  :

                      Defendant.  :

------------------------------------------------------X

       Plaintiff Evri Limited ("Plaintiff" or "Evri"), by and through its undersigned attorneys, McElroy, Deutsch, Mulvaney & Carpenter LLP, as for its Complaint against Defendant Unicargo Supply Chain Solutions, Inc. ("Defendant" or "Unicargo"), alleges upon personal knowledge as to its own acts and status and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

       1.      This action seeks to remedy the wrongful actions of Defendant that have caused significant harm to Plaintiff. Defendant Unicargo wrongfully seized over 180 pallets of luxury goods belonging to Evri's client that were supposed to be delivered to that client.

       2.      Those pallets were delivered to a warehouse owned and operated by Unicargo by Orange Distribution Solutions Inc. ("Orange DS"), sub-contractor of Plaintiff, without Evri's knowledge or approval. Unfortunately, Orange DS failed and ceased doing business as a going concern and, allegedly, owed Unicargo money not only for the goods that were being delivered by Evri, but also in connection with other goods stored with Defendant.

3. After Evri learned of Orange DS' cessation of business, it located the goods that were stored within Defendant's warehouse in Kearny, New Jersey and attempted to negotiate a reasonable fee to be paid to Defendant for storing the goods.

4. Defendant, however, seized on the opportunity to attempt to squeeze Evri to pay as much of Orange DS' alleged debt as possible. Through a series of communications, Unicargo demanded ever increasing amounts for Plaintiff to regain control over the goods and deliver them to its client.

5. At the same time, Plaintiff's customer, Dusk (Retail) Ltd. ("Dusk"), threatened Evri with claims of breach of contract due to Evri's inability to deliver the goods that had been seized by Defendant. Ultimately, as Defendant continued to demand ever increasing amounts of money to release the goods, Plaintiff decided to pay Dusk £350,000 to remedy the claimed breach of contract and to keep its business relationship with Dusk.

6. While Defendant publicly advertises itself as a warehousing provider, Evri has recently learned that Defendant has failed to obtain a license with the New Jersey Division of Consumer Affairs, as required by the New Jersey Public Movers and Warehousemen Licensing Act.

7. As a result of Defendant's wrongful conduct, Plaintiff was forced to pay Dusk £350,000, which currently converts to a value of over $450,000 in U.S. Dollars, to remedy the wrongful deprivation of Dusk's goods caused by Defendant's wrongful conduct. Plaintiff has also suffered additional and yet undetermined amounts of damage in lost business opportunities by virtue of Defendant's actions.

8. By virtue of Defendant's violations of the New Jersey Public Movers and Warehousemen Licensing Act, Plaintiff is entitled to recover treble damages, as well as to recover

its costs and fees, including attorney's fees, from Defendant. In addition, Defendant's wrongful and intentional tortious conduct warrants the imposition of punitive damages.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as Evri is a foreign citizen of the United Kingdom, while Defendant is a citizen of the States of Delaware and New Jersey, and the amount in controversy is greater than $75,000.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant's principal place of business is located in Kearny, New Jersey within this judicial district.

## THE PARTIES

11. Plaintiff Evri is a company formed under the laws of England, with its registered office located at Capitol House, 1 Capitol Close, Morley, Leeds, England.

12. Upon information and belief, Defendant is a corporation formed under the laws of the State of Delaware with its principal place of business located at 78 John Miller Way, Kearny, New Jersey.

## BACKGROUND

13. Plaintiff is a worldwide parcel delivery and courier service based in England, providing delivery services to clients across the world. As necessary, Plaintiff will subcontract with other delivery and courier services to provide delivery services in specific countries for Evri's clients.

14. One of Plaintiff's customers is non-party Dusk Retail Ltd. ("Dusk"), a U.K. based company that sells luxury bedding, towels, cushion covers and throws to its customers, including customers in the United States.

15. In November of 2023 and September of 2024, Evri arranged for the shipment of numerous pallets of towels, sheets, and other materials manufactured for Dusk to be picked up from Karachi, Pakistan and delivered to the New York area. In turn, Evri contracted with Orange DS to deliver those goods into the United States and then store them to be delivered as needed to Dusk's customers.

16. In total, Evri agreed to deliver 400 pallets for Dusk from Pakistan to the United States, utilizing Orange DS for deliveries within the United States.

17. However, unbeknownst to Evri, upon information and belief, Orange DS apparently utilized the services of Defendant to store various goods and materials that Orange DS delivered into the United States for its contracting parties, including Evri.

18. Of the total 400 pallets, Evri would come to later learn that a subset of 183 pallets (175 pallets of stock and 8 pallets of packaging) had been delivered by Orange DS to the warehouse facility operated by Defendant in Kearny, New Jersey.

19. In late November 2024, Orange DS informed Evri that they were unable to fulfill their obligations to deliver goods to Evri's customers, including Dusk. At that time, Evri did not know where the stock that Orange DS had agreed to deliver to Dusk's customers was being housed. Evri reasonably believed that the goods were housed on the premises of facilities belonging to Orange DS. Thereafter, Orange DS stopped operating as a going concern and communications ceased.

20. Subsequently, Evri retained a different sub-contractor to allow for delivery of goods into the United States.

21. Over time, Evri learned that that the goods belonging to Dusk had been placed by Orange DS in a warehouse belonging to Unicargo. After learning that Dusk's goods were being

held in Unicargo's warehouse, in late January 2025 Evri reached out to Unicargo to arrange for delivery of the goods to their rightful owner Dusk.

22. Through a series of phone calls and emails, Evri contacted John Gallo, the CEO of Unicargo, to try and discuss a reasonable resolution and ensure the delivery of the goods back to Dusk. Initially, Unicargo appeared to be open to a reasonable resolution whereby Evri would have paid Unicargo a reasonable amount for having stored the goods plus a small premium to allow for the quick release of the goods.

23. Unfortunately, however, this changed when Unicargo apparently decided to attempt to utilize the situation to try and recover a claimed amount of debt purportedly owed by Orange DS to Unicargo. In early February 2025, Unicargo announced that it intended to keep the goods belonging to Dusk and sell them to recover against the debt purportedly owed to them by Orange DS.

24. Around this point, the CEO of the parent company of Defendant, Amit Chen, inserted himself into the negotiations. He announced that Unicargo would not release the goods belonging to Dusk unless Evri was willing to pay the full amount of debt allegedly owed by Orange DS to Unicargo. This amount included alleged fees and costs purportedly owed by Orange DS to Unicargo for goods that were completely unrelated to the goods belonging to Dusk. More specifically, Mr. Chen demanded that Evri pay the full "face value of the debt" purportedly owed by Orange DS in full to release the Dusk goods to Evri.

25. At the same time, Dusk was demanding that Evri recover the goods belonging to Dusk and threatened to terminate its overall agreement with Evri for the delivery of goods worldwide.

26. Faced with no good options, Evri continued to attempt to negotiate a reasonable resolution with Unicargo for the delivery of the goods belonging to Dusk.

27. During a series of phone calls and email exchanges, counsel for Evri and Unicargo discussed whether a resolution that would allow for the release of the goods belonging to Dusk could be reached.

28. Initially, Unicargo told Evri that it would release the goods in exchange for $82,000, which was purportedly the amount of accrued fees and costs relating to the goods belonging to Dusk. Ultimately, Evri agreed that it would pay the $82,000 demanded for the goods belonging to Dusk, even though it thought the amount was unreasonable. However, Unicargo's demand then changed, and then demanded $120,000 for the release of the goods.

29. Evri continued to attempt to negotiate in good faith with Unicargo, notwithstanding the fact that the amounts demanded by Unicargo were unreasonable and extortionate. At the same time, Dusk wanted the immediate release of its goods and continued to threaten that it would terminate its business relationship with Evri unless it received the goods being held hostage by Unicargo.

30. Despite Evri's efforts to negotiate a reasonable sum to release the goods to Dusk, Unicargo continued to negotiate in bad faith and with an eye to extorting Evri to pay off much, if not all, of the debt allegedly owed by Orange DS to Unicargo. Unicargo's demands increased each and every time, going from $120,000 to $200,000 and then to $220,000.

31. Unicargo's demands were completely unreasonable and untethered to the actual costs of storing the goods belonging to Dusk. However, Unicargo, led by Mr. Chen, continued to demand amounts that would, presumably, allow it to recover from Evri most, if not all, of the

amounts that Orange DS purportedly owed to Unicargo for all of its business, most of which was completely unrelated to the wrongfully retained goods belonging to Dusk.

32. Evri was faced with the untenable decision to either pay Unicargo an extortionate amount or to lose its business relationship with Dusk. Defendant also left Evri with no clear view as to when they would receive the goods if Evri paid Unicargo to recover the stock. Ultimately, Evri made the decision to keep its business relationship and settled with Dusk in exchange for a payment of £350,000 (which is currently equivalent to over $450,000 in U.S. dollars).

33. Upon information and belief, the goods belonging to Dusk remain held by Unicargo. Evri reasonably believes that Unicargo has now attempted to make contact with Dusk in an effort to extort payment to release the goods from Dusk.

34. Under New Jersey law, any business engaged in the business of storage is required to have obtained a license from the New Jersey Department of Consumer Affairs. *See* N.J.S.A. 45:14D-9(a) ("It shall be unlawful for any person to engage in the business of public moving or storage unless he shall have obtained from the director a license to engage in the business…").

35. In an effort to try and determine whether the amounts demanded by Unicargo were accurate, Evri contacted the New Jersey Department of Consumer Affairs to see if it could locate the tariffs filed for the Kearny warehouse. *See* N.J.S.A. 45:14D-14 ("warehousemen shall file their tariffs with the director semiannually"). Evri was informed in response that Unicargo was not licensed with the State of New Jersey as it is required to be.

36. Accordingly, Evri brings this action to seek to recover the amounts it was forced to pay to its client Dusk, along with treble damages and recovery of its costs and expenses, including attorney's fees, as provided by New Jersey law.

## FIRST CAUSE OF ACTION
### Tortious Interference with Business Relations

37. Plaintiff repeats and realleges the allegations set forth in the paragraphs above.

38. During the relevant time period, Defendant Unicargo knew or learned of the existence of an ongoing business relationship between Plaintiff and its customer Dusk.

39. Defendant Unicargo took intentional actions to cause Plaintiff to be in breach of its obligation to cause Dusk's goods to be delivered to Dusk's customers within the United States.

40. Defendant Unicargo engaged in the conduct alleged herein with the intent of causing harm to Evri and to cause Evri to be unable to perform its obligations to Dusk under its agreements.

41. Due to Defendant's conduct, Plaintiff was forced to pay Dusk £350,000 (over $450,000 U.S. dollars) to continue its business relationship with Dusk.

42. As a proximate result of Defendant Unicargo's tortious interference with Plaintiff's business relationship with Dusk, Evri has been damaged in an amount to be determined at trial, but in all events more than $450,000.

43. By virtue of Defendant Unicargo's wonton and willful bad faith and egregious conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial from Defendant Unicargo.

## SECOND CAUSE OF ACTION
### Violation of the New Jersey Public Movers and Warehousemen Licensing Act, N.J.S.A. 45:14D-1, et seq.

44. Plaintiff repeats and realleges the allegations set forth in the paragraphs above.

45. Under New Jersey law, any person engaged in the business of operating a warehouse for storage must obtain a license from the New Jersey Department of Consumer Affairs. *See, e.g.,* N.J.S.A. 45:14D-9(a).

46.     It is unlawful for any person to offer to provide warehouse storage, or advertise to do so, unless a license has been obtained.  N.J.S.A. 45:14D-16a.

47.     Among other things, persons operating a warehouse within New Jersey are required to file their prices, or tariffs, semiannually.  N.J.S.A. 45:14D-14.  The purpose of filing such tariffs is so that the public can know what rates are being charged, and so companies like Unicargo cannot attempt to extort payments from people for the release of their property.

48.     Upon information and belief, Defendant Unicargo failed to obtain a license to operate a warehouse facility within the State of New Jersey.

49.     Despite being unlicensed, Defendant Unicargo prominently advertises itself as a provider of warehousing in New Jersey, and identifies its warehouse in Kearny, New Jersey as its "HQ." *See* https://www.unicargo.com/warehousing-and-fulfillment/.

50.     It is also unlawful for a person operating a warehouse within the State of New Jersey, "whether or not holding a license," to "demand payment beyond or in addition to the lawfully agreed charges for the moving or storage services." N.J.S.A. 45:14D-16b.

51.     Throughout its dealings with Plaintiff, Defendant Unicargo repeatedly demanded payments of amounts greater than those agreed for the goods belonging to Dusk.  Defendant's communications with Evri made it clear that Defendant would only release these goods if Evri paid the alleged owed charges for all goods that Defendant Unicargo was storing for Orange DS.  At no point in time did Defendant agree to release the goods belonging to Dusk in exchange for the lawfully agreed charges between Orange DS and Defendant Unicargo for the specific goods belonging to Dusk.

52.     Under New Jersey law:

Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method,

act, or practice declared unlawful under [the New Jersey Public Movers and Warehousemen Licensing Act] may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any appropriate legal or equitable relief, award threefold damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorney's fees, filing fees, and reasonable costs of suit.

N.J.S.A. 45:14D-24.

53. By virtue of the conduct alleged above, Evri has suffered an ascertainable loss of over $450,000. Under New Jersey law, Evri is entitled to recover threefold damages from Defendant Unicargo, plus its reasonable attorney's fees, filing fees and other reasonable costs of suit.

## THIRD CAUSE OF ACTION
### Destraint

54. Plaintiff repeats and realleges the allegations set forth in the paragraphs above.

55. Defendant was made aware that the goods belonging to Dusk were the property of Dusk that was in the process of being delivered by Evri.

56. Defendant seized the goods belonging to Dusk and held them in an effort to recover the complete alleged debt of Orange DS to Unicargo, even though Defendant knew that the goods at issue were not the property of Orange DS.

57. Defendant's destraint of the goods belonging to Dusk was, and is, wrongful and has deprived Dusk of its right to its property and Evri of its right to fulfill its obligation to deliver Dusk's goods.

58. By virtue of Defendant's wrongful destraint, Evri has been damaged in the amount of more than $450,000, representing the sums it was forced to pay to Dusk to repair Evri's relationship with its customer.

59. By virtue of the conduct alleged above, Evri has suffered an ascertainable loss of more than $450,000, which is subject to doubling under New Jersey law for the wrongful destraint conducted by Unicargo.

### FOURTH CAUSE OF ACTION
### Conversion

60. Plaintiff repeats and realleges the allegations set forth in the paragraphs above.

61. Evri, by virtue of its contractual relationship with Dusk, had a possessory right to the goods belonging to Dusk that were deposited at Unicargo's Kearney warehouse by Orange DS without the knowledge or permission of Evri.

62. Unicargo was made aware of Dusk's ultimate ownership right of, and Evri's possessory right to transport, the goods held at Defendant's warehouse.

63. Despite having affirmative knowledge of the ownership and possessory rights of Dusk and Evri, Defendants repudiated the right of possession by seizing the goods and refusing to return them unless Evri paid all, or substantially all, of the alleged debt owed by Orange DS to Unicargo.

64. By virtue of Defendant's wrongful conversion of the goods belonging to Dusk, Evri has suffered damages in the amount of more than $450,000, representing the amount paid by Evri to Dusk as a result of Defendant's wrongful conduct.

65. Evri is also entitled to recover punitive damages from Defendant for its egregious and wanton wrongful conduct.

### FIFTH CAUSE OF ACTION
### Prima Facie Tort

66. Plaintiff repeats and realleges the allegations set forth in the paragraphs above.

67. By virtue of the conduct alleged above, Defendant has intentionally harmed Evri without justification.

68. Due to Defendant's wrongful conduct, Evri has been damaged in the amount of more than $450,000, representing the amount paid to settle with Dusk.

69. To the extent that Evri is unable to recover on its other claims, Defendant is liable to Evri for the amount Evri was forced to pay to Dusk due to Defendants wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

i. Awarding Plaintiff damages on Count I in an amount to be determined at trial or otherwise, but no less than $450,000, together with applicable interest thereon;

ii. Awarding Plaintiff damages on Count II in an amount to be determined at trial or otherwise, but no less than $450,000, but trebled to no less than $1,350,000, plus its costs and fees, including attorney's fees, together with interest thereon;

iii. Awarding Plaintiff damages on Count III in an amount to be determined at trial or otherwise, but no less than $450,000, but doubled to no less than $900,000, together with applicable interest thereon;

iv. Awarding Plaintiff damages on Count IV in an amount to be determined at trial or otherwise, but no less than $450,000, together with applicable interest thereon, and additional punitive or exemplary damages in an amount to be determined following trial or otherwise;

v. Awarding Plaintiff damages on Count V in an amount to be determined at trial or otherwise, but no less than $450,000, together with applicable interest thereon;

    vi.    Awarding to Plaintiff the fees, costs, and expenses of this action, including attorney's fees; and

    vii.    Granting Plaintiff such other and further relief, in law and/or in equity, as the Court may deem just and proper.

Dated: Morristown, New Jersey
       April 1, 2025

Respectfully submitted,

By:   /s/ Nicholas K. Lagemann
Nicholas K. Lagemann
(nlagemann@mdmc-law.com)
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mt. Kemble Ave
P.O. Box 2075
Morristown, NJ 07962
(973) 425-8210

*Counsel for Plaintiff Evri Limited*